## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSHUA K. BOYER,

      Petitioner,

v.                                CASE NO. 8:05-CV-623-T-30TBM
                                     Criminal Case No. 8:01-CR-56–30TBM

UNITED STATES OF AMERICA,

      Respondent.

_____/

# ORDER

**BEFORE THE COURT** is Petitioner's First Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. #5), the Government's Response in Opposition (CV Dkt. #18) and Petitioner's Reply thereto (CV Dkt. #22).

## Background

Petitioner was charged in three counts of a five count superseding indictment with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii); possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924 and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871 (CR Dkt. #48). Following a jury trial,[1] Petitioner was convicted on all three counts (CR Dkt. #138). He was sentenced to a total term of imprisonment of 288 months (CR Dkt. #199). Petitioner's

---

[1] Petitioner was tried jointly with codefendants Robert Howe, Ronnie Mota and Anthony Williams. Two other codefendants, Jerome Lummus and John Holzer, entered guilty pleas prior to trial. *See* CR Dkt. #115, #133.

conviction and sentence were affirmed on direct appeal. *See* CR Dkt. #256; *United States v. Boyer*, 77 Fed.Appx. 508 (Table) (11th Cir. 2003); *cert. denied*, *Boyer v. United States*, 541 U.S. 964 (2004). Petitioner filed his original motion (hereinafter "original motion") pursuant to 28 U.S.C. § 2255 on March 24, 2005 (CR Dkt. #275; CV Dkt. #1). *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999). He filed the instant first amended motion (hereinafter "amended motion") on May 10, 2005 (CV Dkt. #5). *Id.*

In his amended motion, Petitioner raises the following claims for relief:

(1)   his trial attorney rendered ineffective assistance in failing to confer with Petitioner's previous attorney and had insufficient time to prepare for trial;

(2)   his trial attorney rendered ineffective assistance in failing to interview particular witnesses;

(3)   his trial attorney rendered ineffective assistance in failing to object to the admission of lay opinion testimony;

(4)   the Government engaged in prosecutorial misconduct by repeatedly referring to Petitioner as a member of a "crew" or "organization" of experienced offenders;

(5)   his sentence violates 18 U.S.C. § 3553(a) because the district court incorrectly considered itself bound by the sentencing guidelines and disregarded other sentencing factors;

(6)   his sentence violates the Sixth Amendment because the district court sentenced him based on facts not admitted by Petitioner or proven to the jury beyond a reasonable doubt;

(7)   his sentence warrants correction so as to reflect an intervening change to the United States Sentencing Guidelines (hereinafter "Sentencing Guidelines"); and

(8)     his sentence violates the Fifth and Sixth Amendments because the Government engaged in misconduct during his direct appeal by repeatedly misstating the evidence offered at trial.

(CV Dkt. 5).

## Standard of Review

Title 28, United States Code, Section 2255 provides the framework for reviewing a federal prisoner's sentence under four circumstances: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988). Generally, only constitutional claims, jurisdictional claims and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable in a § 2255 motion for relief. *See United States v. Addonizio*, 442 U.S. 178, 184-86, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

## Discussion

Petitioner raises three claims of ineffective assistance of counsel. The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him. To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S.

668 (1984).  First, Petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation.  *Id.* at 687-88.  This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases.  *Id.* at 689.  Second, even if Petitioner can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that the outcome of the proceeding would have been different.  *Id.* at 688, 694.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings.  *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'"  *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take."  *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) *(citing Chandler*, 218 F.3d at 1315).  Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (*quoting Strickland,* 466 U.S. at 689).  Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it."  *Adams v.*

*Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).   Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment.   As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act."  Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

## CLAIM ONE

In the first claim of his amended § 2255 motion, Petitioner alleges his attorney was ineffective at trial in failing to confer with Petitioner's previous attorney and had insufficient time to prepare for trial.  Specifically, he alleges that his trial attorney, Kenneth S. Siegel ("Seigel"), was appointed on June 28, 2001, and that the trial began just seven business days later on July 9, 2001. Petitioner contends that Seigel did not confer with Petitioner's previous counsel, Victor Martinez ("Martinez"), about any aspect of Petitioner's defense.[2]  Petitioner further alleges that Seigel was afforded only a few days time to prepare for trial, whereas counsel for codefendants Williams, Howe and Mota had more than five months to prepare. This claim lacks merit.

As a threshold matter, Petitioner does not cite any particular act or omission that was not the result of reasonable professional judgment  to evince that his attorney had inadequate

---

[2] Martinez of the Office of the Federal Public Defender was appointed to represent Petitioner at trial.  *See* CR Dkt. #34.  Martinez subsequently filed a motion to withdraw as counsel, citing a conflict of interest.  *See* CR Dkt. #105. The motion was granted and Seigel was appointed to represent Petitioner at trial.  *See* CR Dkt. #107.

time to prepare for trial.  *See Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002).  A review of the record demonstrates that jury selection in the criminal case began on July 9, 2001 (CR Dkt. #121).  However, the trial did not actually commence until July 23, 2001.[3] Consequently, Seigel had twenty-five days from the date  he was appointed to represent Petitioner to prepare for trial.  Petitioner does not offer any evidence to establish that counsel was not prepared for trial.[4]  Rather, he simply hypothesizes that "the complexity of possible defenses available to [him] ... necessitated more time for trial preparation" (CV Dkt. #5, p. 16).   As to his allegation that Seigel did not discuss the underlying criminal case with Martinez, Petitioner offers no evidence to support such an allegation.

Aside from his own conclusory assertions, Petitioner provides no evidentiary support for his contention that his attorney was not prepared to represent him at trial.  As the Eleventh Circuit has explained, "[s]peculation is insufficient to carry the burden of a [] petitioner as to what evidence could have been revealed by further investigation." *Id.* at 1060 (*quoting Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985).  Petitioner has not demonstrated that his attorney's performance was objectively unreasonable or that the outcome of his trial would have been different had his attorney had more time to prepare for trial.  Having failed to satisfy the *Strickland* standard, relief on Claim One will be denied.

---

[3] Due to the death of a family member, counsel for codefendant Williams moved for a continuance of the trial. The Court orally granted counsel's motion and trial was rescheduled for July 23, 2001.  Trial began on that date without further delay.  *See* CR Dkt. #124.

[4] Moreover, Petitioner's attorney prepared and filed a motion to dismiss the superseding indictment on Petitioner's behalf prior to the commencement of trial.  *See* CR Dkt. #120.

**CLAIM TWO**

In his second claim, Petitioner contends that his attorney was ineffective in failing to interview particular witnesses. First, he alleges that his attorney failed to interview Tim Manzi ("Manzi") who would have testified that Manzi was the person who introduced Petitioner to Howe and Holzer. Petitioner contends such testimony would have established that he was not part of the "crew" under investigation by law enforcement. Second, he claims his attorney failed to interview Melissa Creedon ("Creedon") who was living with Petitioner at the time of his arrest. Petitioner alleges that Creedon would have testified that he had not yet decided to participate in the stash house robbery[5] and that such testimony would have undermined the Government's proof of the agreement essential to the conspiracy charge. Third, Petitioner claims his attorney failed to interview Evan O'Neill ("O'Neill") who would have testified to discussions between himself and Petitioner in which Petitioner explained that he was "playing along to determine if there was any truth to the prospect" of the conspiracy. Finally, Petitioner asserts that his attorney should have interviewed unnamed experts to testify about the effects of long-term drug dependency and that such testimony would have enabled the jury to evaluate Petitioner's actions in relation to his commitment to the conspiracy.

Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no

---

[5] As part of the undercover investigation, agents of the Bureau of Alcohol, Tobacco and Firearms set up a reverse sting operation in which Petitioner and his codefendants were to rob an alleged known drug house and steal cocaine and cash. *See* CR Dkt. #218, pp. 31-48.

competent attorney would have chosen it." *Adams*, 709 F.2d at 1445.  "Judicial scrutiny of counsel's performance must be highly deferential ⋯ a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).[6]  In deciding an ineffectiveness claim, a court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  *Strickland*, 466 U.S. at 690.

As a threshold matter, Petitioner provides no evidence to demonstrate that his attorney did not interview any of the aforementioned prospective witnesses.  Notwithstanding, Petitioner's assertions as to what these witnesses may have testified to are vague and speculative.  Even if his attorney had interviewed and called Manzi, Creedon, O'Neill and some unnamed expert as witnesses at trial, there is nothing to suggest that any of them would have testified favorably for Petitioner as he hypothesizes.  Petitioner has failed to show a reasonable probability that any testimony provided by these witnesses would have affected the outcome of his trial in any way such that he would have been found not guilty.  The

---

[6] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

evidence adduced at trial shows, *inter alia*, that Petitioner drove several of his codefendants to an Army-Navy store to purchase materials for the robbery including police shirts and badges (CR Dkt. #219, pp. 87-88); that he lent money to Howe to purchase these items (CR Dkt. #219, p. 88); that he attended a meeting where the details of the robbery were discussed (CR Dkt. #216, pp. 90-92; #219, pp 89-94); that prior to the robbery he went to Home Depot and purchased plastic ties to be used as flex cuffs during the robbery (CR Dkt. #216 p. 102-103); that he arrived at the robbery site dressed in a police shirt and badge (CR Dkt. #216, pp. 104-106; #217, p. 20); and that he stated to an undercover law enforcement officer that he and his codefendants were "ready to do this thing" (CR Dkt. #218, p. 40).

Petitioner has not demonstrated that his attorney's performance was outside the bounds of reasonable professional judgment. *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (internal citation omitted) ("[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision"); *Chandler*, 218 F.3d at 1314 (*citing Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy")).   Furthermore, Petitioner has not established that his attorney's trial strategy was so outside the range of professional competence that he suffered prejudice as a result thereof. *See Wainwright*, 709 F.2d at 1445; *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (holding that failure to interview witnesses could not constitute ineffective assistance without a showing that the investigation would have helped defendant).   Thus, having failed to establish that he was prejudiced by

trial counsel's alleged deficient performance, Petitioner is not entitled to relief on this claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 697 ("[There is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); *see also Coulter v. Herring*, 60 F.3d 1499, 1504 n. 8 (11th Cir. 1995).

**CLAIM THREE**

In his third claim, Petitioner contends that his trial attorney rendered ineffective assistance in failing to object to the admission of lay opinion testimony.  Petitioner alleges that his attorney did  not challenge the admissibility of certain testimony offered by Special Agents Michael Coad ("Coad") and Richard Zayas ("Zayas") of the Bureau of Alcohol, Tobacco and Firearms.  First, as to Coad, Petitioner claims that he testified that Petitioner was a member of the street gang the Latin Kings.  Petitioner denies such affiliation. Petitioner contends that Coad testified as to his familiarity with the Latin Kings and codefendant Howe's affiliation with that gang.  Immediately following the testimony related to Howe, Coad identified Petitioner as a member of Howe's "gang" or "organization." Petitioner asserts that this testimony made the jury believe that he was a member of the Latin Kings.  He claims that his attorney's failure to object to this testimony and failure to ask for a limiting instruction rendered counsel ineffective.

A review of the record clearly refutes Petitioner's claim.  As support for his claim, Petitioner points to a particular portion of the trial transcript in which Coad testified about

his familiarity with the Latin Kings.[7]   Contrary to Petitioner's assertion, Coad does not

identify Petitioner as a member of Howe's gang or as a member of the Latin Kings.[8]

---

[7] At trial, the Government introduced a surveillance video tape (Govt. Trial Ex. 12) depicting activities of co-defendant Howe in the presence of Coad and Zayas.  With respect to the video, Coad testified as follows:

| | |
|---|---|
| Mr. Matheney: | Agent Coad, we just saw Mr. Howe remove a shirt.  What, if anything, did he show you and Special Agent Zayas? |
| The Witness: | A tattoo that he had on his upper arm. |
| Mr. Matheney: | And did you actually see that tattoo? |
| The Witness: | Yes, I did. |
| Mr. Matheney: | Did you recognize that tattoo? |
| The Witness: | Yes, I did. |
| Mr. Matheney: | What did you recognize that tattoo as? |
| Mr. Crawford: | Objection, irrelevant. |
| The Court: | Overruled. |
| The Witness: | From previous investigations I'd worked on down in Miami when I was down there, it was a type of a Latin King tattoo insignia on his upper arm. |
| Mr. Matheney: | What's a Latin King? |
| The Witness: | It's a predominantly Latin gang that operates down in Miami. |

(CR. Dkt. #216, pp. 63-64).

[8] Following the testimony relating to the Latin Kings cited *supra*, Coad further testified as follows relating to events depicted on the video:

| | |
|---|---|
| Mr. Matheney: | Now, one of the things we hear discussed is Mr. Howe makes reference to four or five people in his crew or four or five people who may be participating in this unlawful plan.  What significance does that have to you, if any? |
| The Witness: | Just the amount of people that were possibly going to be there.  I had already met with Mr. Lummus, Mr. Holzer and then Mr. Howe.  I didn't know if he meant four or five additional people, four or five total, but there were more players out there who were involved with this group that law enforcement had no idea who they were. |
| Mr. Matheney: | And did that affect your decision of whether or not to make an arrest of those two people at that time? |
| The Witness: | Yes, it did |

Accordingly, there was no basis upon which his attorney could have objected on the ground

Petitioner now claims.  Counsel was not obligated to raise a frivolous objection to testimony

that did not exist.  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992); *Chandler*

*v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) *(citing United States v. Nyhuis*, 211 F.3d

1340, 1344 (11th Cir. 2000)).

As to Zayas, Petitioner alleges that Zayas's testimony relating to his role in the

undercover investigation and the stash house raid scenario was improper lay opinion

testimony and that this testimony impermissibly suggested that he was an experienced armed

bank robber.  In the instant motion, Petitioner points to the following testimony as the basis

for this claim:

| | |
|---|---|
| Mr. Matheney[9]: | Now Agent Coad  - - I'm sorry.  Agent Zayas, we have talked a little bit about the scenario that you - - you've told this jury about and you also told Mr. Howe and Holzer about on January the 30th.  Why did you pick the scenario as you did, children , residential neighborhood?  Why did you pick that scenario? |
| Agent Zayas: | As I stated, it's very important that these individuals understand that this is a very difficult situation and it's also a dangerous situation and that the only individuals which we're going to investigate doing this type of crime are individuals which are actually doing this type of crime, which have experience in this type of crime.  This isn't a type of crime you're going to commit the first time out of the gate.  This is something you've been involved in over a period of time and you're going to commit this type of crime. |

(CR Dkt. #216, p. 64).

[9] At trial, the Government was represented by Erik R. Matheney of the United States Attorney's Office.

| Mr. Matheney: | So when you created the scenario of there being a residential community and children involved, what was the purpose of that? |
| Agent Zayas: | The purpose was to make the scenario such that only someone involved in this type of crime is going to do it. |

(CR Dkt. #218, pp. 35-36).  Petitioner contends this testimony was improper pursuant to Federal Rule of Evidence 701[10] and that his attorney was ineffective for failing to object to its admission.

Contrary to Petitioner's assertion, this particular portion of Zayas's testimony does not identify Petitioner as an experienced armed robber.[11]   Rather, Zayas's testimony described the circumstances of his participation in the investigation and the choice of scenario used in the reverse sting.   Notwithstanding, even if Zayas's testimony were characterized as Petitioner suggests, he has done nothing more than contend that his attorney should have pursued a different trial strategy and objected to this testimony.  Petitioner has not demonstrated that his attorney's tactical decision to not object to this testimony was patently unreasonable or beyond the range of reasonable professional competence.  *See Adams*, 709 F.2d at 1445.  Moreover, he has failed to establish that, but for counsel's failure to object in this particular instance, there is a reasonable probability that the outcome of his

---

[10] Rule 701 states as follows:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or a determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

[11] A review of the record shows that the only defendants mentioned by name by Zayas in this portion of his testimony are Howe and Holzer.  *See* CR Dkt. #218, pp. 34-37.

trial would have been different.  *See Strickland*, 466 U.S. at 688, 694.  Accordingly, Petitioner is not entitled to relief on this claim.

**CLAIM FOUR**

In Claim Four of the instant motion, Petitioner alleges that the Government engaged in prosecutorial misconduct by repeatedly referring to Petitioner as a member of a "crew" or "organization" of experienced offenders.  He contends that such references were improper and that these "countless misstatements and misrepresentations" were material in obtaining his conviction.

Petitioner did not raise this issue on direct appeal.  *See* CR Dkt. #256.  Section 2255 is not intended to be a substitute for direct appeal.  *See Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) *cert. denied*, 514 U.S. 1112 (1995).  Generally, available challenges to a criminal conviction or sentence must be advanced on direct appeal or else they will be considered procedurally barred in a § 2255 proceeding.  *See Cummings v. United States*, 2005 WL 1669015 at *2 (M.D. Fla. 2005) (*citing Mills*, 36 F.3d at 1055).  Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards*, 837 F.2d at 966 (*quoting United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981)).  Petitioner's claim of prosecutorial misconduct raised in Claim Four is non-constitutional in nature and does not provide a basis for collateral relief absent a showing that a denial of relief would result in a miscarriage of justice.  *See,*

*e.g.*, *Alicea-Torres v. United States*, 2006 WL 2849846 at *7 (D.P.R. 2006); *Hammouda v. United States*, 2006 WL 941759 at *3 (E.D.N.Y. 2006). As a threshold matter, Petitioner has not made this requisite showing. Accordingly, the Court finds that this claim of Petitioner's amended motion is not cognizable on collateral review.

Even assuming, *arguendo,* that the claim raised in Claim Four were cognizable, it is procedurally defaulted and barred from consideration on collateral review. Where a petitioner has failed to raise a claim that could and should have been raised at sentencing or on direct appeal, district court review of such a claim is barred absent a showing of the procedural default requirements of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167-70, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). To show cause for not raising a claim on direct appeal, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Lynn*, 365 F.3d at 1235 , n. 20 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). To show prejudice, Petitioner must demonstrate that "errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations omitted). To establish actual innocence, Petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. This means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623-24.

In the instant case, Petitioner points to no external impediment that prevented him from raising this issue on appeal and thus he fails to allege any cause to excuse his default. *See Lynn*, 365 F.3d at 1235, n. 20. Even if the Court were to construe his allegations as alleging such, he cannot demonstrate prejudice. Furthermore, there is no evidence, nor does Petitioner even suggest, that he is actually innocent of the crimes for which he was convicted. Petitioner's claim is wholly unsupported by any factual evidence that the Government's actions in the course of his trial were inappropriate. Therefore, Petitioner is procedurally barred from raising the claim made in Claim Four and relief on this claim will be denied.

## CLAIMS FIVE AND SIX

In Claim Five, Petitioner argues that in light of the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Court is no longer bound by the Sentencing Guidelines and may now consider factors that it could not at the time of sentencing in 2001.[12] Consequently, Petitioner claims he is entitled to resentencing. In Claim Six, Petitioner asserts that pursuant to the *Booker* decision, he is entitled to resentencing upon consideration of the amount of cocaine for which he was responsible. Specifically, he claims that the jury, having found him guilty of conspiracy to possess with intent to distribute cocaine as alleged in Count One of the indictment, found that that offense involved five kilograms or more of cocaine. *See* CR. Dkt. #142. At sentencing, the Court found the amount of cocaine involved to be eighteen kilograms. *See* CR Dkt. #222,

---

[12] Specifically, Petitioner argues that the Court should reevaluate his sentence in light of those factors to be considered in imposing a sentence set forth in 18 U.S.C. § 3553(a).

pp. 4-16.  Petitioner contends he should now be resentenced based solely on the jury's finding.

These claims are premised on the Supreme Court's ruling in *Booker* which extended the procedural rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 137 L.Ed.2d 435 (2000) to the United States Sentencing Guidelines.  Petitioner's sentence became final on April 1, 2004, several months prior to the decision in *Booker* issued on January 12, 2005. The United States Court of Appeals for the Eleventh Circuit has held that *Booker* is not retroactively applicable on collateral review.  *See Varela v. United States*, 400 F.3d 864, 867 (11th Cir.) (per curium), *cert. denied*, — U.S. — , 126 S.Ct. 312, 163 L.Ed.2d 269 (2005).  Accordingly, relief on Claims Five and Six is not available to Petitioner pursuant to § 2255.  Further, Petitioner admitted at sentencing that the underlying robbery involved eighteen kilograms of cocaine.[13]  *See* CR Dkt. #222, pp. 4-5.  Petitioner's objection

---

[13] At sentencing, Petitioner's attorney argued as follows with respect Petitioner's objection to the amount of drugs stated in the presentence report:

Mr. Seigel:  With respect to the quantity issue, while it is true that the plan involved 18 kilograms of cocaine, the fact is that if this has [sic] been a true authentic arrangement and had been carried out and brought to any kind of fruition where 18 kilograms truly were seized, Mr. Boyer - - and I feel safe in saying the rest of the group - - would not have been able in any way whatsoever to distribute it.  They would not have known how to do it.  They did not have the present ability, or in terms of the language of the guideline, were not reasonably capable of disposing of 18 kilograms of cocaine.

And given that set of circumstances to which I think Mr. Boyer did testify to at  time [sic] of trial and I believe there was also testimony from Mr. Howe on that, that they should not be charged with the full 18 kilograms.

The applicable guideline, which is 2D1.1 and then footnote - - I guess it's note 12 that deals with offenses where there is an agreement to sell a controlled substance but, in fact, where the deal is never consummated.  And it does say that if, however, the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing the agreed upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she

to his presentence report was premised on his ability to distribute eighteen kilograms of cocaine.  Thus, to the extent that Petitioner did not object to the factual accuracy of the amount of cocaine as stated in the presentence report, he is deemed to have admitted that fact.  *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005).  Consequently, this claim lacks merit and relief will be denied.

## CLAIMS SEVEN AND EIGHT

In his final two claims, Petitioner asserts two new claims that were not presented in his original § 2255 motion.  *See* CV Dkts. #1, #5.  In Claim Seven, Petitioner alleges that a 2004 revision to § 2D1.1 of the Sentencing Guidelines warrants correction of his sentence. He contends that the amendment to § 2D1.1 makes clear that a sentencing court "... shall exclude from the offense level determination the amount of controlled substance, if any, the defendant establishes that he did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, regardless of whether the defendant agreed to be the

---

did not intend to provide or was not reasonably capable of providing.  And here I - - this group was not capable of distributing 18 kilograms, if any kilograms, of cocaine.

And I think it's important to remember, Your Honor, that the deal, so to speak, was sweetened to a tremendous extent by the lure of not only the possibility that there was going to be a large amount of cocaine there but that there was going to be a large amount of cash. And obviously, I think at least as far as what you can sort of draw from the tapes and watching maybe Mr. Howe's - - some of Mr. Howe's statements on the tapes, that he was really, it seemed to me, primarily interested in getting the cash as opposed to getting the cocaine.  I'm not saying that he wouldn't have taken it.  But there supposedly could have been up to around $200,000 in cash, I think was one of the comments mentioned.  And I think in many ways the cocaine that supposedly was going to be found was almost secondary to what was more appealing.  Obviously much more easily to be translated into immediate gratification would have been the cash, not the cocaine.  So on that, I would state that the - - there was not proof that these people were reasonably capable of distributing 18 kilograms of cocaine or even one kilogram.

(CR Dkt. #222, pp. 4-6).

buyer or seller." CV Dkt. #5, p. 39. Petitioner contends this amendment to the Sentencing Guidelines is retroactively applicable because it is "clarifying in nature." *Id.* In Claim Eight, he alleges that the Government misstated the evidence presented on appeal which affected the outcome of the appellate proceeding.

Petitioner's conviction became final on April 1, 2004, when the United States Supreme Court denied his petition for writ of certiorari. *See Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001). Thus, he had one year from that date, until April 1, 2005, to file a timely § 2255 motion.[14] He filed his original § 2255 motion on March 24, 2005. *See* CV Dkt. #1. That motion was timely filed. To the extent that Petitioner realleges those claims presented in his original motion in the instant amended motion, such claims are timely.[15] Petitioner did not file the instant amended motion until May 10, 2005. *See* CV Dkt. #5. Claims Seven and Eight were not presented in Petitioner's original § 2255 and are now before the Court for the first time in the instant amended motion. Thus, these claims are untimely under the one-year period of limitation and are barred unless they relate back to the

---

[14] Section 2255 provides, in relevant part:

A 1-year limitations period shall apply to a motion under this section. The limitation period shall run from the latest of –
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

[15] Petitioner presented Clams One through Six in his original motion and restates those same claims in the instant amended motion.

original motion.

"'Relation back' causes an otherwise untimely claim to be considered by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).  To relate back to a timely § 2255 motion, a subsequently presented claim must arise from the same conduct and occurrences that formed the basis of the timely asserted claims.  *See Grant v. United States*, 2006 WL 3040752 at *3 (M.D. Ala. Oct. 26, 2006) (*citing Davenport*, 217 F.3d at 1346); *see also* Fed. R. Civ. Proc. 15(c).[16] "[T]he untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344 (citations omitted).

Petitioner's new claim relating to sentencing pursuant to a change in the Sentencing Guidelines does not relate back to his original claims of ineffective assistance of counsel or prosecutorial misconduct presented in his original motion.  To the extent that Claim Eight alleging Government misconduct relating to the Government's repeated reference to Petitioner as a member or a "crew" or "organization" on appeal can be said to relate to similar conduct by the Government at trial as alleged by Petitioner in Claim Four, *supra*, the Court cannot find that such a claim relates back so as to deem Claim Eight timely.  The Government's conduct on appeal is a separate occurrence in both time and type from its

---

[16] Rule 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading."   Fed. R. Civ. Proc. 15(c)(2).

conduct during the trial.  *See Davenport*, 217 F.3d at 1344-45; *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999).  Petitioner's Claims One through Six relate to digressions alleged to have occurred during trial and at sentencing; whereas Claims Seven and Eight are premised on facts alleged to have occurred on appeal and beyond.  Accordingly, Claims Seven and Eight do not arise from the same conduct and occurrences that formed the basis of the timely asserted claims in the original motion and are therefore time barred.

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's First Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. #5) is DENIED.

2.      The Clerk is to enter judgment for Respondent, United States of America, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on November 13, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel/Parties of Record